**UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN**

In re:

JMG Ventures, LLC

Debtor.

Case No. 24-11650-beh
Chapter 11 (Subchapter V)

**DEBTOR'S BRIEF IN SUPPORT OF, AND RESPONSE TO
OBJECTION OF KAPITUS SERVICING, INC. TO,
CONFIRMATION OF DEBTOR'S THIRD AMENDED PLAN OF
REORGANIZATION DATED APRIL 3, 2026**

JMG Ventures, LLC, the debtor herein (the "**Debtor**" or "**JMG**"), by its attorneys, Richman & Richman LLC, by Attorney Eliza M. Reyes, hereby files its Response to Objection of Kapitus Servicing, Inc. to Confirmation of Debtor's Third Amended Plan of Reorganization ("**Response**"). In support thereof, the Debtor states as follows:

**Background**

On August 19, 2024 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 Subchapter V of the United States Bankruptcy Code, commencing the above-captioned bankruptcy case.

JMG owns and operates Middleton Jewelers, Madison and Middleton's premier gold and jewelry destination, located at 6629 University Avenue, #104, Middleton, Wisconsin, 53562 ("**Middleton Jewelers**"). Middleton Jewelers features a refined showroom providing fine and custom jewelry for retail sale. Middleton Jewelers also offers jewelry repair and appraisal services.

On April 2, 2025, the Debtor filed its Amended Plan of Reorganization Dated April 2, 2025 ("**Amended Plan**") [Doc 127].

On May 5, 2025, Kapitus Servicing, Inc. ("**Kapitus**") filed its Objection of Kapitus Servicing, Inc. to Confirmation of Debtor's Amended Plan of Reorganization [Doc 139].

On July 30, 2025 the Court filed its Order Sustaining, in Limited Part, Kapitus's Objection to Confirmation of the Debtor's Plan of Reorganization [Doc 176].

The final hearing on confirmation of the Amended Plan took place on August 28, 2025, limited to presentation of evidence related to valuation of the Debtor's assets. The Court then asked for two rounds of post-hearing briefing to address the various issues raised by the parties at the confirmation hearings.

On December 6, 2026, the Court filed a Decision and Order on Valuation of Debtor's Inventory for Purposes of Confirmation of Debtor's Plan of Reorganization ("**Order on Valuation**") [Doc 212].

Pursuant to the Order on Valuation, the Court determined that the Debtor's retail inventory should be valued at wholesale cost; that memo inventory qualifies as consignment inventory under Wisconsin law; that the wholesale cost of owned and memo inventory totaled $482,653.78, and that as of the time of the confirmation hearings during the summer of 2025, the total amount of secured claims against the Debtor's assets equaled $948,512.66.

2

In accordance with the provisions of the Order on Valuation, on April 3, 2026, the Debtor filed its Amended Plan of Reorganization Dated April 3, 2026 ("**Third Amended Plan**") [Doc 214]. The Third Amended Plan included a liquidation analysis providing values of the Debtor's assets, including its owned and memo inventory values, as of the date of the filing of the Third Amended Plan ("**Liquidation Analysis**").

On April 13, 2026, the Court filed an Order and Notice of Plan Confirmation Hearing and Related Procedures and Deadlines ("**Solicitation Procedures Order**") [Doc 216].

On May 18, 2026, Kapitus filed its Objection of Kapitus Servicing, Inc. to Confirmation of Debtor's Third Amended Plan of Reorganization ("**Kapitus Objection**") [Doc 222]. Kapitus is the only party objecting to confirmation of the Third Amended Plan.

### Summary of Response to Kapitus Objection

According to the Kapitus Objection, as it has asserted throughout these proceedings, Kapitus continues to take issue with the Debtor's inventory values, believing there is controversy because they are not what they were one year ago, and that "[t]here is reason to question if the Debtor's inventory is undervalued." However, Kapitus' real objection is that the total of value of the Debtor's assets still do not allow Kapitus' claim to be treated as a secured claim, and therefore, because its claim continues to be treated as unsecured, the Third Amended Plan cannot be confirmed because it is being proposed in bad faith.

Kapitus fails to recognize (or simply chooses to ignore) that the liquidation analysis prepared by the Debtor as of April 2026 is required to reflect the value of the Debtor's assets *as of April 2026*, and not one year, or even six months, prior. Moreover, Kapitus seems to assert that the Debtor should be hoarding its jewelry inventory, rather than selling the inventory as part of its normal business operations to earn income which in turn will be used to implement the Third Amended Plan. Kapitus's arguments here are nonsensical. The fact of the matter is that the Debtor's inventory values as of April 2026 are going to be different from what they were in 2025. This is not bad faith, it is the Debtor continuing to operate its business as a retail store. Debtor operates as a retail jewelry store and has been selling inventory over the last six months as its operations require. If anything, it is Kapitus who is acting in bad faith as Kapitus' expectations that the inventory values should be the same now as it was one year ago are not supported by any applicable provisions of the Bankruptcy Code or by the facts of this Case.

Despite the Kapitus Objection, as will be shown herein and shown by the Debtor at the plan confirmation hearing, the Third Amended Plan complies with substantially all of the confirmation requirements of the Bankruptcy Code. A substantial part of this brief is devoted to the undisputed confirmation requirements because the Debtor has the burden of showing such compliance by a preponderance of the evidence, whether there is an objection or not. Moreover, as shown herein, Kapitus' objections should be overruled and the Third Amended Plan should be confirmed.

4

## THE THIRD AMENDED PLAN SATISFIES THE DISCLOSURE REQUIREMENTS OF SECTION 1190 OF THE BANKRUPTCY CODE

Pursuant to Section 1190 of the Bankruptcy Code, a plan filed under Subchapter V:

a) Shall include – (A) a brief history of the business operations of the debtor; (B) a liquidation analysis; and (C) projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization – and –

b) Shall provide for the submission of all or such portion of the future earnings of further income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan11 U.S.C. § 1190(1)-(2).

11 U.S.C. § 1190.

The Third Amended Plan satisfies the disclosure requirements of Section 1190. Part A of the Third Amended Plan in particular contains a brief history of the Debtors' business operations. Additional information and key events that have transpired before and during the Chapter 11 case are also set forth in the Third Amended Plan.

The Third Amended Plan also includes the Liquidation Analysis which reflects the Debtor's best estimate as to what amounts would be derived from the liquidation of its assets.

Additionally, Article 3 of the Third Amended Plan requires that the Debtor make distributions to certain creditors as soon as practicable. The Third Amended Plan also provides that the Debtor will make all future payments required under the Third Amended Plan and that the services of the Subchapter V Trustee will terminate

5

on the Effective Date. Accordingly, Section 1190(2) of the Bankruptcy Code does not apply.

Accordingly, the Third Amended Plan satisfies the requirements of Section 1190.

## THE PLAN SATISFIES THE APPLICABLE PROVISIONS OF SECTION 1129(a) OF THE BANKRUPTCY CODE

A nonconsensual plan can be confirmed under Section 1191(b) if all requirements of Section 1129(a), other than subsections 1129(a)(8), (a)(10) and (a)(15), are met and the plan does not discriminate unfairly, and is fair and equitable, with respect to each impaired class of claims or interests that did not accept the plan. 11 U.S.C. § 1191(b). The Third Amended Plan should be confirmed by the Court as it meets all applicable requirements of Section 1129(a).

## THE PLAN SATISFIES THE APPLICABLE PROVISIONS OF SECTION 1129(a)(1) OF THE BANKRUPTCY CODE

Section 1129(a)(1) of the Bankruptcy Code requires that a plan comply "with the applicable provisions of this title." 11 U.S.C. § 1129(a)(1). Section 1129 (a)(1) has been interpreted by the courts to mean that the form and content of the plan must meet all of the statutory requirements, including the proper classification of claims under Section 1122 and the inclusion of mandatory provisions in the plan under Section 1123. *See In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 723, 757 (Bankr. S.D.N.Y. 1992) ("The legislative history of § 1129(a)(1) explains that this provision embodies the requirements of §§ 1122 and 1123, respectively, governing classification of claims and the contents of the Plan"); H.R. Rep. No. 595, 95th Cong.,

1st Sess., at 412 (1977) ("Paragraph (1) [of 1129(a)] requires that the plan comply with the applicable provisions of chapter 11, such as section[s] 1122 and 1123, governing classification and contents of [a] plan"); *see also In re Johns-Manville Corp.*, 843 F.2d 636, 648-49 (2d Cir. 1988); *In re Castle Arch Real Estate Inv. Co., LLC*, 2013 Bankr. LEXIS 2335 (Bankr. D. Utah June 7, 2013); *In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 599 (Bankr. D. Del. 2001).

In brief, the Third Amended Plan divides the creditor claims and equity interests into classes, placing substantially similar claims together in the same class in a rational manner.

**THE PLAN COMPLIES WITH SECTION 1123
OF THE BANKRUPTCY CODE**

The Third Amended Plan complies with the applicable provisions of Section 1123 of the Bankruptcy Code which sets forth the mandatory and permissive contents required for a plan.

**SECTION 1123(a)(1) – DESIGNATION OF CLASSES
OF CLAIMS AND INTERESTS**

Section 1123(a)(1) of the Bankruptcy Code requires that a plan designate classes of claims, other than claims of a kind specified in Sections 507(a)(2), (3) or (8) of the Bankruptcy Code.

The Third Amended Plan in Article 2 provides for two classes of priority unsecured claims, six classes of secured claims, one class of non-priority unsecured claims, and one class of equity security holders. The Third Amended Plan does not classify administrative (Section 507(a)(2)) or priority tax (Section 508(a)(8) claims.

7

Accordingly, the Third Amended Plan complies with the applicable provisions of Section 1123(a)(1).

## SECTION 1123(a)(2) – THE PLAN SPECIFIES UNIMPAIRED CLASSES

Section 1123(a)(2) of the Bankruptcy Code requires that a plan specify any class of claims or interests that is unimpaired under the Plan.

Article 4 of the Third Amended Plan identifies Class 9 as unimpaired. Accordingly, the Third Amended Plan complies with the applicable provisions of Section 1123(a)(2).

## SECTION 1123(a)(3) – THE PLAN SPECIFIES THE TREATMENT OF IMPAIRED CLASSES

Section 1123(a)(3) of the Bankruptcy Code requires that a plan specify the treatment of any class of claims or interests that is impaired under the Plan.

Under the Third Amended Plan, Classes 1, 2, 3, 4, 5, 6, 7, and 8 are impaired.

Article 4 of the Third Amended Plan sets forth Plan's proposed treatment of such classes.

Accordingly, the Third Amended Plan complies with the applicable provisions of Section 1123(a)(3).

## SECTION 1123(a)(4) – THE PLAN PROVIDES FOR THE SAME TREATMENT FOR CLAIMS OR INTERESTS WITHIN THE SAME CLASS

Section 1123(a)(4) of the Bankruptcy Code requires that a plan provide that each claim or interest in a particular class receive the same treatment as other claims or interests in the class (unless the holder of a particular claim or interest agrees to a less favorable treatment).

8

Article 4 of the Third Amended Plan satisfies this requirement by providing that each claim or interest that is classified in a particular class under the Third Amended Plan will receive that same treatment as the other claims and interests included in such class.

Accordingly, the Third Amended Plan complies with Section 1123(a)(4) of the Bankruptcy Code.

### SECTION 1123(a)(5) – THE PLAN PROVIDES ADEQUATE MEANS FOR ITS IMPLEMENTATION

Section 1123(a)(5) of the Bankruptcy Code requires that a plan contain adequate means for its implementation, which can include the retention by the debtor of property of the estate, the sale of property, merger with another entity, and/or the issuance of securities of the debtor in exchange for claims or interests. 11 U.S.C. § 1123(a)(5).

The Third Amended Plan contains adequate means for its implementation. As set forth in Articles 1 and 7 of the Plan, the Third Amended Plan will be implemented by the actions described below occurring on or shortly after the Effective Date.

The Debtor will implement and fund the distributions to creditors provided for in the Third Amended Plan by continuing to operate Middleton Jewelers and generating income, as set forth in the Third Amended Plan and in the attached financial projections. Manmeet S. Soin ("**Soin**") is and will remain the sole member of the Debtor and manager of Middleton Jewelers, and the Debtor shall make all disbursements pursuant to the terms of the Third Amended Plan.

Accordingly, the Third Amended Plan complies with Section 1123(a)(5) of the Bankruptcy Code.

### SECTION 1123(a)(6) – THE PLAN PROVIDES THAT THE REORGANIZED DEBTORS WILL PROHIBIT THE ISSUANCE OF NONVOTING EQUITY SECURITIES

Section 1123(a)(6) of the Bankruptcy Code requires that a plan prohibit non-voting equity securities and provide the appropriate distribution of voting power among the classes of securities.

The Third Amended Plan does not provide for the issuance of non-voting equity securities.

Accordingly, the Third Amended Plan complies with Section 1123(a)(6) of the Bankruptcy Code.

### SECTION 1123(a)(7) – THE PLAN CONTAINS APPROPRIATE PROVISIONS WITH RESPECT TO THE SELECTION OF POST-CONFIRMATION DIRECTORS AND OFFICERS

Section 1123(a)(7) of the Bankruptcy Code requires that the selection of any officer or director of the debtor or any trustee, and of any successor thereto, be consistent with the interests of creditors and interest holders and with public policy.

Article 8 of the Third Amended Plan provides that Soin will continue in his role as the sole and managing manager of the Debtor. Soin is the face of Middleton Jewelers and since the filing of this Case, has not only stabilized the Debtor's operations but increased its income. More importantly, Soin continues his efforts to put Middleton Jewelers as one of the best jewelry stores in the greater Dane County area. The continuation of Soin as sole and managing member of the Debtor is

10

consistent with the interests of the Debtor's creditors, the Debtor's estate, and with public policy.

Accordingly, the Third Amended Plan complies with Section 1123(a)(7).

As set forth above, the Third Amended Plan satisfies the mandatory plan requirements contained in Section 1123(a) of the Bankruptcy Code that are applicable in this Bankruptcy Case.

## SECTION 1123(b) – THE PLAN CONTAINS APPROPRIATE DISCRETIONARY PROVISIONS NOT INCONSISTENT WITH THE BANKRUPTCY CODE

Section 1123(b) of the Bankruptcy Code enumerates certain discretionary provisions that are permissible in a plan, including any "provision not inconsistent with the applicable provisions" of the Bankruptcy Code. 11 U.S.C. § 1123(b)(6). All the provisions of the Third Amended Plan are consistent with Section 1123(b) and the provisions of the Bankruptcy Code.

The Third Amended Plan provides, inter alia, in Articles 4, 5, and 6, for the: (a) impairment of certain claims; (b) the settlement of various claims and controversies as necessary; and (c) the assumption, assignment, and rejection of executory contracts and unexpired leases.

Each of these provisions of the Third Amended Plan is consistent with Section 1123(b) and the Bankruptcy Code.

Accordingly, the Third Amended Plan complies with Section 1123(b).

11

## THE PLAN SATISFIES THE APPLICABLE PROVISIONS OF SECTION 1129(a)(2) OF THE BANKRUPTCY CODE

Section 1129(a)(2) of the Bankruptcy Code requires that the plan proponent comply "with the applicable provisions of this title." 11 U.S.C. § 1129(a)(2).

The legislative history with respect to this section, as well as applicable case law, interprets the focus of Section 1129(a)(2) to be whether the plan proponent has complied with the disclosure and solicitation requirements of Sections 1125 and 1126. *See In re PWS Holding Corp.*, 228 F.3d 224, 248 (3d Cir. 2000); *In re Texaco Inc.*, 84 B.R. 893, 906-07 (Bankr. S.D.N.Y. 1988); *see also In re Drexel Burnham Lambert Grp. Inc.*, 138 B.R. 723, 769 (Bankr. S.D.N.Y. 1992( (Section 1129(a)(2) satisfied where debtors complied with all provisions of Bankruptcy Code and Bankruptcy Rules governing notice, disclosure and solicitation relating to the plan). Pursuant to Section 1181(b) of the Bankruptcy Code, the disclosure requirements of Section 1125 are inapplicable to the Subchapter V case unless otherwise ordered by the Court. Section 1190 requires only that certain disclosures be incorporated into a plan of reorganization filed under Subchapter V.

This Court has not ordered a separate disclosure statement in this case. As detailed above, the Third Amended Plan meets the disclosure requirements under Section 1190 in connection with a Subchapter V plan.

The Debtor, as plan proponent, has served the Third Amended Plan and related solicitation materials, in compliance with the Solicitation Procedures Order. *See* Declaration of Mailing Certificate of Service [Doc 218]. Accordingly, the Debtor has complied with Section 1129(a)(2).

**THE PLAN HAS BEEN PROPOSED IN GOOD FAITH AND NOT BY ANY MEANS FORBIDDEN BY LAW – 11 U.S.C. § 1129(a)(3)**

Section 1129(a)(3) of the Bankruptcy Code requires a plan proponent to propose a plan "in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3).

In determining good faith under Section 1129(a)(3), courts address whether the plan was proposed with good intentions and will achieve a result that is consistent with the objectives of the Bankruptcy Code. *See In re PWS Holding Corp.*, 228 F.3d 224, 242 (3d Cir. 2000) ("for purposes of determining good faith under Section 1129(a)(3) . . . the important point of inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code"); *In re Madison Hotel Assocs.*, 749 F.2d 410, 425 (7th Cir. 1984); *In re Granite Broadcasting Corp.*, 369 B.R. 120, 128 (Bankr. S.D.N.Y. 2007); *see also In re Trinity Family Practice & Urgent Care PLLC*, 661 B.R. 793 (Bankr. W.D. Tex. 2024) (discussing the good faith requirement in the context of the confirmation of a Subchapter V plan); *In re Trimax Med. Management*, 2024 Bankr. LEXIS 1203 (Bankr. M.D. Ga. May 20, 2024) (same).

Good faith is to be determined "in light of the totality of the circumstances surrounding" formulation of the plan. *In re Pub. Fin. Corp.*, 712 F.2d 219, 221 (5th Cir. 1983); *In re Edgewood Food Mart, Inc.*, 2024 Bankr. LEXIS 2712 (Bankr. N.D. Ga. Nov. 6, 2024) (Subchapter V confirmation); *In re Oneida Ltd.*, 351 B.R. 79, 85 (Bankr. S.D.N.Y. 2006).

13

As provided in the Third Amended Plan, this Bankruptcy Case was commenced for the purposes of reorganizing the Debtor's business and proposing a plan which accomplishes such objective and provides distributions to creditors. All of these results are consistent with the purposes and objectives of Chapter 11.

Accordingly, the Third Amended Plan was proposed in good faith and achieves a result that is consistent with the provisions of the Bankruptcy Code. Section 1129(a)(3) is therefore satisfied.

### THE PLAN PROVIDES FOR COURT APPROVAL OF PAYMENT FOR SERVICES AND EXPENSES – 11 U.S.C. § 1129(a)(4)

Section 1129(a)(4) requires that payments "for services or for costs and expenses in connection with the case, or in connection with the plan and incident to the case," be approved by the court as reasonable. 11 U.S.C. § 1129(a)(4)/

Section 1129(a)(4) has been construed by the courts to require that all professional fees and expenses be subject to review and approval by the Bankruptcy Court. *See In re WorldCom*, 2003 Bankr. LEXIS 1401 (Bankr. S.D.N.Y. Oct. 31, 2003).

To date, no professional fees or expenses have been paid by the Debtors without prior approval of the Bankruptcy Court.

Accordingly, the Third Amended Plan satisfies Section 1129(a)(4).

### THE PLAN DISCLOSES ALL NECESSARY INFORMATION REGARDING DIRECTORS AND OFFICERS OF THE DEBTORS UNDER THE PLAN – 11 U.S.C. § 1129(a)(5)

Sections 1129(a)(5)(A)(i) and (ii) of the Bankruptcy Code require that a plan proponent disclose the "identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor,"

14

and requires a finding that "the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy." 11 U.S.C. §§ 1129(a)(5)(A)(i) and (ii). Section 1129(a)(5)(B) of the Bankruptcy Code further requires that a plan proponent disclose the "identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider." 11 U.S.C. § 1129(a)(5)(B).

As previously discussed herein, Article 8 of the Third Amended Plan provides that Soin will continue in his role as the sole and managing manager of the Debtor. Based upon Soin's experience and qualifications, and his continuing efforts to grow the Debtor's business, Soin continuing as the sole and managing member of the Debtor is consistent with the interests of the Debtor's creditors, the Debtor's estate, and with public policy.

Accordingly, the Third Amended Plan satisfies Section 1129(a)(5).

### THE PLAN DOES NOT CONTAIN RATE CHANGES SUBJECT TO THE JURISDICTION OF ANY GOVERNMENTAL REGULATORY COMMISSION – 11 U.S.C. § 1129(a)(6)

Section 1129(a)(6) of the Bankruptcy Code requires that any regulatory commission having jurisdiction over the rates charged by a reorganized debtor in the operation of its business approve any rate change provided for in the plan.

Section 1129(a)(6) is inapplicable because the Debtors are not subject to the jurisdiction of any regulatory commission nor does the Third Amended Plan provide for any changes in any rates subject to such regulatory approval.

15

## THE PLAN IS IN THE BEST INTERESTS OF CREDITORS AND EQUITY INTEREST HOLDERS – 11 U.S.C. § 1129(a)(7)

Section 1129(a)(7) of the Bankruptcy Code codifies what is generally referred to as the "best interests of creditors test."

Section 1129(a)(7) requires that, with respect to each class of impaired claims or interests under a plan, every holder of a claim or interest in such impaired class either (i) accept the plan, or (ii) receive or retain property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtor were liquidated under Chapter 7 of the Bankruptcy Code. *United States v. Reorganized CF&I Fabricators, Inc.*, 518 U.S. 213, 228 (1996).

As provided in Article 7 of the Third Amended Plan and by the Liquidation Analysis, the Debtor will implement and fund the Third Amended Plan by continuing to operate Middleton Jewelers and generate income.

The Liquidation Analysis, which shall also be presented as evidence at the confirmation hearing, confirms that all classes that have not accepted the Plan, including Kapitus, are receiving property of a value, as of the effective date of the Plan, that is greater than the amount that such holders would receive or retain if the Debtor were liquidated under chapter 7.

According to the Liquidation Analysis, the chapter 7 liquidation value of the Debtor is approximately $595,768.01, which includes the wholesale value of the Debtor's owned and memo inventory. Subtracting for a trustee's fee and other chapter 7 expenses, after payment to the Debtor's secured lenders, there would be nothing available for distribution to creditors under chapter 7. See Liquidation Analysis.

16

However, because the Third Amended Plan proposes distributions to all unsecured creditors (including all who have not accepted the Plan), the Liquidation Analysis demonstrates the Debtor's compliance with the best interests of creditors test of section 1129(a)(7).

Accordingly, the Third Amended Plan satisfies the best interests of creditors test and Section 1129(a)(7), and Kapitus' assertion that the Third Amended Plan cannot be confirmed should be overruled.

### SECTION 1129(a)(8) IS INAPPLICABLE – 11 U.S.C. § 1129(a)(8)

Section 1129(a)(8) requires that each class of claims and interests established under a plan either accept the plan or not be impaired under the plan. 11 U.S.C. § 1129(a)(8).

Pursuant to Section 1126(c) of the Bankruptcy Code, a class of impaired claims accepts a plan if holders of at least two thirds in dollar amount and more than one-half in number of the claims in that class actually vote to accept the plan. 11 U.S.C. § 1126(c). Pursuant to Section 1126(d), a class of interests accepts a plan if holders of at least two-thirds in amount of the allowed interests in that class actually vote to accept the plan. 11 U.S.C. § 1126(d). A class is deemed to have rejected a plan if the plan provides that the claims or interests of that class do not receive or retain any property under the plan on account of such claims or interests. *See* 11 U.S.C. § 1126(g).

Class 6 creditor Kapitus returned a ballot rejecting the Third Amended Plan, and American Express National Bank ("**American Express**"), a Class 8 creditor,

17

returned a ballot accepting the Third Amended Plan. The remaining impaired classes did not return ballots accepting or rejecting the Third Amended Plan.

As a result, the confirmation of the Third Amended Plan must proceed under Section 1191(b), which renders Section 1129(a)(8) inapplicable. As discussed in further detail below, the Third Amended Plan does not discriminate unfairly and is fair and equitable with respect to each class that is impaired and did not accept the Plan.

## THE PLAN PROVIDES FOR PAYMENT IN FULL OF ALL ALLOWED PRIORITY CLAIMS – 11 U.S.C. § 1129(a)(9)

Section 1129(a)(9) of the Bankruptcy Code provides that (unless the holder of a claim has agreed to a different treatment): (i) the holder of a claim entitled to priority under Section 507(a)(2) or (3) must receive cash equal to the allowed amount of its claim on the effective date of the plan, (ii) the holder of a claim entitled to priority under Section 507(a)(1), (4), (5), (6), or (7) must receive either cash in the allowed amount of such claim on the effective date of the plan or deferred cash payment of a value, as of the effective date, equal to the allowed amounts of such claim, and (iii) the holder of a tax claim entitled to priority under Section 507(a)(8) must receive on account of such claim regular installment payments in cash (a) of the total value, as of the effective date of the plan, equal to the allowed amount of such claim, (b) over a period ending not later than 5 years after the date of the order for relief, and (c) in a manner not less favorable than the most favored nonpriority unsecured claim.

As provided in Articles 1, 3, and 8 of the Third Amended Plan, each holder of an Allowed Administrative Expense Claim under Section 503 of the Bankruptcy Code will be paid in full, on the later of the Effective Date or fourteen (14) days following such Claim becoming an Allowed Administrative Expense Claim, in cash, or upon such other terms as may be agreed upon by the holder of an Administrative Expense Claim and the Debtor.

As provided in Article 4 of the Third Amended Plan, the Wisconsin Department of Revenue and the Internal Revenue Service, each holder of a priority claim allowed under Section 507(a)(8) of the Bankruptcy Code, will be paid in full, in cash, on the later of: (i) the Effective Date, (ii) 30 days after the Priority Tax Claim is filed, if filed after the Effective Date but prior to the Governmental Claim Bar Date, or (iii) upon such other terms as may be agreed upon by the Holder of a Priority Tax Claim and the Debtor.

Accordingly, the Third Amended Plan satisfies Section 1129(a)(9).

### SECTION 1129(a)(10) HAS BEEN SATISFIED (THOUGH IT IS INAPPLICABLE UNDER SECTION 1191(b))

Section 1129(a)(10) requires that at least one class of claims that is impaired under the plan has voted to accept the plan, determined without including any acceptance of the plan by any insider.

As set forth above, American Express, a creditor from impaired Class 8, voted to accept the Plan. Accordingly, the requirement of Section 1129(a)(10) has been met.

**THE PLAN IS FEASIBLE – 11 U.S.C. § 1129(a)(11)**

Section 1129(a)(11) of the Bankruptcy Code provides that a plan of reorganization may be confirmed only if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan. Section 1129(a)(11) is referred to as the feasibility standard or feasibility test.

In the Seventh Circuit, "to determine that a plan is feasible, 'the bankruptcy court need not find that it is guaranteed to succeed; only a reasonable assurance of commercial viability is required.'" *In re KMC Real Estate Inv., LLC*, 531 B.R. 758, 768 (Bankr. S.D. Ind. 2015) (emphasis in original) (citing *In re 203 N. La Salle St. P'ship*, 126 F.3d 955, 961–62 (7th Cir. 1997), rev'd on other grounds, 526 U.S. 434, 119 S. Ct. 1411 (1999)); *In re Aurora Memory Care, LLC*, 589 B.R. 631, 640 (Bankr. N.D. Ill. 2018). Accordingly, the feasibility test is met if the plan is workable and offers a reasonable likelihood of success. See *United States v. Energy Res. Co., Inc.*, 495 U.S. 545, 549 (1990); *In re Texaco Inc.*, 84 B.R. at 910 ("All that is required is that there be reasonable assurance of commercial viability."). Success need not be guaranteed. *In re T-H New Orleans Ltd. P'ship*, 116 F.3d 790, 801 (5th Cir. 1997); see also *In re W.R. Grace & Co.,* 729 F.3d 332, 348 (3d Cir. 2013) ("[s]uccess need not be guaranteed, but must be reasonably likely."); *In re Haas*, 162 F.3d 1087, 1090 (11th Cir. 1998) (chapter 11 Plan meets feasibility standard if the plan offers a reasonable prospect of success and is workable); *In re Johns-Manville Corp.*, 843 F.2d at 649 ("the feasibility

standard is whether the plan offers a reasonable assurance of success."); *In re Adelphia Bus. Sols., Inc.,* 341 B.R. 415, 421-22 (Bankr. S.D.N.Y. 2003) ("[i]n making determinations as to feasibility . . . a bankruptcy court does not need to know to a certainty or even a substantial probability, that the plan will succeed. All it needs to know is that the plan has a reasonable likelihood of success").

The existence of some uncertainty with respect to the future or future results is insufficient by itself to find a plan not feasible. *Drexel Burnham Lambert Grp.*, 138 B.R. at 762 ("[j]ust as speculative prospects of success cannot sustain feasibility, speculative prospects of failure cannot defeat feasibility. The mere prospect of financial uncertainty cannot defeat confirmation on feasibility grounds since a guarantee of the future is not required").

When assessing feasibility, courts consider "the company's earning power, the sufficiency of the capital structure, economic conditions, managerial efficiency, and whether the same management will continue to operate the company." *In re Lupton Consulting LLC*, 633 B.R. 844, 866 (Bankr. E.D. Wis. 2021) (citing *In re Am. Consol. Transp. Cos, Inc.,* 470 B.R. 478, 490 (Bankr. N.D. Ill. 2012)).

The Third Amended Plan proposes to pay creditors of the Debtors from the projected income of the Debtor over the term of the Third Amended Plan. Indeed, as can be seen from the Debtor's monthly operating reports, the Debtor has been consistently earning substantial income after making ordinary operating during this chapter 11 Case. Accordingly, the Debtor will have a sufficient capital structure post-confirmation to sustain feasibility.

21

Kapitus only generally asserts that the Third Amended Plan is not feasible. However, the Debtor's cash flow projections, prepared by Soin based upon the Debtor's financial performance the last year and his considerable experience in the retail jewelry industry, assume that the Debtor's revenues are projected to increase through the life of the Third Amended Plan at a very conservative rate. Kapitus has not provided, and will likely not be able to provide, any evidence to the contrary.

Based on the undisputed facts and the evidence to be presented at the confirmation hearing, the Third Amended Plan thus satisfies the feasibility test set forth in section 1129(a)(11).

**SECTIONS 1129(a)(12), (13), (14), (15), AND (16) ARE INAPPLICABLE**

Section 1129(a)(12) requires that a plan provide that all fees payable under 28 U.S.C. § 1930 be paid on or before the effective date of the plan. Because this is a Subchapter V case, the Debtors are not obligated to pay to the U.S. Trustee any quarterly, or other fees, under Section 1930. 28 U.S.C. § 1930(a)(6).

Section 1129(a)(13) of the Bankruptcy Code requires that all retiree benefits continue to be paid post-confirmation at any levels established in accordance with Section 1114 of the Bankruptcy Code. The Debtors do not have any present obligation to pay retiree benefits within the meaning of Section 1129(a)(13). Thus, Section 1129(a)(13) is not applicable for confirmation.

Pursuant to Section 1191(b) of the Bankruptcy Code, Section 1129(a)(15) is inapplicable in the Subchapter V case.

Section 1129(a)(16) applies only to transfers of property under a plan by a corporation or trust that is not for profit entity. Thus, Section 1129(a)(16) is not applicable for confirmation.

### THE PLAN MEETS ALL OF THE REQUIREMENTS UNDER SECTION 1191(b) FOR CONFIRMATION

Under Section 1191(b) of the Bankruptcy Code, a Subchapter V plan can be confirmed (crammed down) notwithstanding the nonacceptance of the plan by an impaired class of creditors provided that: (a) all of the applicable requirements of Section 1129(a), other than subsections 1129(a)(8), (10), and (15), have been satisfied, and (b) the plan does not discriminate unfairly, and is fair and equitable, with respect to each impaired class of claims or interests that did not accept the plan. 11 U.S.C. § 1191(b).

As shown above, the Third Amended Plan satisfies all of the applicable provisions of Section 1129(a). As discussed in further detail below, despite Kapitus' objections to the contrary, the Plan does not discriminate unfairly and is fair and equitable with respect to classes that are impaired and deemed to reject the plan.

Kapitus asserts that the Third Amended Plan cannot be confirmed as a non-consensual plan under sections 1191(b) and (c) of the Bankruptcy Code, because the Third Amended Plan fails to comply with the requirements of Section 1129(b)(2)(A) because the provisions of the Third Amended Plan extinguishes Kapitus's lien rights, despite a potential allowed secured claim, and because the "[plan] discriminates unfairly and is not fair and equitable to the Class 6 creditors". *See* Kapitus Objection, p. 8. Kapitus' assertions are without merit.

To demonstrate that a Subchapter V plan is confirmable even if it does not provide for full payment of a claim treated as unsecured due to the absence of equity for the claim to attach to, the Debtor must establish compliance with the applicable confirmation requirements pursuant to Section 1191. Specifically, a proposed plan must meet the "fair and equitable" standard under Section 1191(b) and satisfy the "best interests of creditors" test under Section 1129(a)(7), as incorporated by Section 1191(a).

Pursuant to Section 1191, a plan is "fair and equitable" with respect to the impaired class of unsecured claims if the plan provides for the following:

- **Projected Disposable Income Requirement**: The plan must provide that all of the debtor's projected disposable income to be received during the 3-year period (or up to 5 years, as fixed by the court) will be applied to payments under the plan, or the value of property to be distributed under the plan during this period must not be less than the debtor's projected disposable income

- **Feasibility**: The debtor must demonstrate a reasonable likelihood of being able to make all payments under the plan, and the plan must include appropriate remedies to protect creditors in the event of a default.

*See* 11 U.S.C. § 1191.

The term "disposable income" is defined under Section 1191(d) as income not reasonably necessary "for the maintenance or support of the debtor or a dependent",

24

or "for the continuation, preservation, or operation of the debtor's business. 11 U.S.C. § 1191(d).

The plan must also satisfy the "best interest of creditors" test, which requires that each holder of an impaired claim receive at least as much under the plan as they would receive in a hypothetical Chapter 7 liquidation.

Pursuant to the Liquidation Analysis, the Debtor's assets are fully encumbered by secured claims. Therefore, while liquidating the Debtor's assets would allow its secured creditors to recover some or all of their claims after accounting for the costs of liquidation, in a hypothetical Chapter 7 case, liquidation of its assets would not leave any recovery for the Debtor's unsecured creditors. However, the Third Amended Plan also provides as follows:

> Non-priority unsecured claimants holding allowed claims, estimated in the total amount of $703,292.43, which amounts include the claims of claimants in *Classes 6 and 7*, and the unsecured portion of the claim of the U.S. Small Business Administration and the Internal Revenue Service, as discussed herein, will share on a pro rata basis in the Debtor's disposable income, which amount is to be determined as the difference between the opening balance and closing balance at the end of each fiscal year, except for the final payment, which shall be determined as of the last month of the Third Amended Plan, anticipated to be June 2031, to account for unanticipated business interruptions, changes in the Debtor's cash flow due to shifting trends in the retail jewelry industry, and potential impacts of tariffs expected to be imposed by the current administration, on the jewelry industry. The Debtor shall make such distributions and concurrently file a report with an accounting of the disposable income and distributions on or before the last day of the following month.

Third Amended Plan, Article 4.01. pp. 18-19 (emphasis supplied).

Moreover, as discussed in further detail herein, the Third Amended Plan does not discriminate unfairly and is fair and equitable with respect to all impaired classes pursuant to the provisions of the Third Amended Plan.

## THE PLAN DOES NOT DISCRIMINATE UNFAIRLY
## WITH RESPECT TO IMPAIRED CLASSES

Section 1129(b) requires that a plan not discriminate *unfairly*. However, discrimination in the sense of different treatment is permitted if fair and supported by reasonable business justifications. The Debtor must separate dissimilar classes (section 1122) and may separate similar claims into separate classes and treat them differently where "separate classification is permitted for 'good business reasons.'" *In re Bernhard Steiner Pianos USA, Inc.*, 292 B.R. 109, 114 (Bankr. N.D. Tex. 2002) (citations omitted). "Good business reasons" are broad and varied. Courts have found that maintaining good will for future debtor operations, continuing relationships with creditors who are essential to the continued operations of the debtor, maintaining labor relations, and avoiding accrual of interest all to be valid business reasons to separately classify similar claims and treat them differently. *See Spin City EC, L.L.C.*, 578 B.R. at 640 (maintaining goodwill); *In re STC, Inc.*, 2016 Bankr. LEXIS 1110, at *15 (Bankr. S.D. Ill. Apr. 7, 2016) (continuing relationships with essential creditors); *In re Greenwood Point, LP*, 445 B.R. 885, 909 (Bankr. S.D. Ind. 2011) (avoiding accrual of interest); *In re Snyders Drug Stores, Inc.*, 307 B.R. 889, 893-894 (Bankr. N.D. Ohio 2004) (goodwill for future operations); *Bernhard Steiner Pianos,* 292 B.R. at 114 (continuing relationship with essential creditors); *Aetna Cas. & Sur.*

26

*Co. v. Clerk, U.S. Bankr. Ct (In re Chateaugay Corp.)*, 89 F.3d 942, 949-950 (2d Cir. 1996) (maintaining labor relations).

Kapitus asserts that the Third Amended Plan discriminates unfairly against Kapitus primarily because its Class 6 secured claim is being treated as an unsecured claim pursuant to the provisions of Class 8.

Because unfair discrimination only applies to the differential treatment of *substantially similar claims*, Kapitus' objection is without merit. Class 6 includes secured lenders who provided high-interest business financing loans to the Debtor, and to whom the Debtor pledged collateral to secure such loans. *All* claimants in Class 6, including Kapitus, are being treated as unsecured creditors under Class. There is also justification in including Kapitus in Class 6 as it is similar to the other claimants in that they are secured lenders whose claims have no equity to attach to. Under the circumstances there could be nothing that could be considered discriminatory or unfair with respect to Kapitus' treatment.

The bottom line is that Kapitus cannot accept the reality that it is a vastly undersecured creditor. Kapitus continues to pick a fight with the valuation of the Debtor's inventory pursuant to the Liquidation Analysis, asserting (1) that "the valuation date is months prior to the Confirmation hearing"; (2) that "the combined inventory value (Memo and Owned) of $398,512.31 is nearly $100,000 less than the wholesale cost of $482,653.78 described in the Court's *Decision and Order on Valuation of Debtor's Inventory for Purposes of Confirmation of Debtor's Plan of Reorganization…*"; (3) that "there is reason to question if the Debtor's inventory is

undervalued….”; and that that the Debtor has decided to "plow its money from the proceeds it receives from its retail sales of its inventory into the purchase of replacement inventory". *See generally,* Kapitus Objection.

Unfortunately, simply making these assertions will never increase the value of the Debtor's owned and memo inventory to an extent that Kapitus' claim can be treated as secured. And it is doubtful that Kapitus will be able to present any evidence contradicting the Debtor's inventory values during the confirmation hearing.

As previously stated in prior briefings and testimony from the Debtor, using proceeds from retail sales for replacement inventory is necessary for the Debtor's continued operations and maintaining the ordinary course of business as a retailer. Having fresh inventory is necessary in order for the Debtor to continue its operations as a viable business. The Debtor's inventory is the life blood of its business and if the Debtor operated its business in the way that Kapitus believes it should be operated *so that its claim could be treated as secured*, the Debtor would never realize any income to pay any of its creditors, much less Kapitus.

The Debtor has been working diligently since the Petition Date to stabilize and reorganize its business operations. The Debtor proposed the Third Amended Plan (and the plans the Debtor previously proposed) to pay its creditors and to reach this goal. There is no bad faith here. Kapitus' argument generally that the Third Amended Plan was proposed in bad faith is not only factually erroneous, it is legally unsupportable or irrelevant.

The treatment of Kapitus' claim under the Third Amended Plan does not constitute unfair discrimination and is not proposed in bad faith. Accordingly, the Plan does not discriminate unfairly against Kapitus (or any other impaired class) and section 1129(b) of the Bankruptcy Code is satisfied.

## THE PLAN IS FAIR AND EQUITABLE WITH RESPECT TO IMPAIRED CLASSES

Under Section 1191(c)(2), a plan is fair and equitable with respect to a class of impaired interest if, as of the effective date of the plan, (a) the plan provides that all of the projected disposable income of the debtor to be received in the 3-year period (or such longer period not to exceed 5 years as the court fixes) beginning on the date that the first payment is due under the plan will be applied to make payments under the plan, or (b) the value of the property to be distributed under the plan in the 3-year period (or such longer period not to exceed 5 years as the court fixes) beginning on the date on which the first distribution is due under the plan is not less than the projected disposable income of the debtor.

Additionally, under Section 1191(c)(3), a debtor must demonstrate to the court either (a) the debtor will be able to make all of the payments required under the plan, or (b) there is a reasonable likelihood that the debtor will be able to make all of the payments under the plan and the plan provides appropriate remedies to protect the holders of claims or interests in the event that the payments are not made. 11 U.S.C. § 1191(c)(3).

The Third Amended Plan complies with Section 1191(c)(3)(a). As demonstrated in the Liquidation Analysis attached to the Third Amended Plan, the Debtor expects

29

to be able to generate the projected disposable income over the five-year period (or less) and therefore has the ability to make all of the payments required under the Third Amended Plan.

Additionally, the Third Amended Plan provides appropriate remedies in the event that the payments under the Third Amended Plan are not made as set forth in Article 8.07 of the Plan. Any alleged default under the Third Amended Plan will be cured by the Debtors within 30 days from receipt of written notice from any creditor.

Accordingly, the Third Amended Plan satisfies the requirements of Section 1191(c)(3)(b) if necessary.

As demonstrated above, the Third Amended Plan does not discriminate unfairly against impaired Classes and is fair and equitable with respect to such Classes pursuant to Section 1191(c).

The Plan therefore satisfies the requirements of Section 1191(b) for confirmation of a nonconsensual plan.

## CONCLUSION

**WHEREFORE**, for the reasons set forth herein, the Third Amended Plan satisfies the applicable requirements of Sections 1129(a) and 1191(b) for confirmation of the Third Amended Plan. JMG Ventures, LLC therefore respectfully requests that the Court (1) overrule the Kapitus Objection, (2) confirm the Third Amended Plan, and (3) grant such other and further relief as is just and appropriate under the circumstances.

Dated: May 26, 2026.        **RICHMAN & RICHMAN LLC**
                            **Attorneys for JMG Ventures, LLC**

By: _____*/s/ Eliza M. Reyes*_____

Claire Ann Richman
Eliza M. Reyes
122 W. Washington Ave., Suite 850
Madison, WI 53703
Tel: (608) 630-8990; Fax: (608) 630-8991
ereyes@randr.law